FILED

SEP **2 7** 2021

MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TYJAI J.[1],

                                    Plaintiff,

      -v-

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

_____

1:20-CV-00767-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 17)

Plaintiff Tyjai J. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying him Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the following reasons, plaintiff's motion (Dkt. No. 12) is denied and the Commissioner's motion (Dkt. No. 14) is granted.

**BACKGROUND[2]**

Plaintiff filed an application for SSI on December 2, 2016, alleging disability since that date due to learning disability, attention deficient hyperactivity disorder (ADHD), and

---

[1] In accordance with the November 18, 2020 Standing Order, issued by the Hon. Frank P. Geraci, Jr., Chief Judge of the United States District Court for the Western District of New York, this Decision and Order will identify plaintiff using only his first name and last initial.
[2] The Court assumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

bipolar disorder. (*See* Tr. 63)[3] Plaintiff's disability benefits application was initially denied on April 20, 2017. (Tr. 72) Plaintiff timely filed a written request for a hearing on May 26, 2017. (Tr. 80) A video hearing was held before Administrative Law Judge Elizabeth Ebner ("the ALJ") on December 14, 2018. (Tr. 28-61) Plaintiff, who was represented by counsel, testified at the hearing. (*Id.*) The ALJ also received testimony from Vocational Expert Cyndee Burnett ("the VE"). (*Id.*) On March 21, 2019, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 15-26) The Appeals Council denied plaintiff's request for review of the ALJ's determination on March 27, 2020, and this action followed. (Tr. 1-6)

Born on June 9, 1998, plaintiff was eighteen years old on the date his application for benefits was filed.  (Tr. 21, 32, 63) He has completed high school. (Tr. 32) In addition, plaintiff worked for about two months as a server or dishwasher at a restaurant while attending high school but was fired from the position before turning eighteen. (Tr. 32)

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v.*

---

[3] References to "Tr." are to the administrative record in this case.

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the

3

claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does

have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his application date of December 2, 2016. (Tr. 17) At step two, the ALJ found that plaintiff has the severe impairments of ADHD; status post knee repair; osteoarthritis of the bilateral knees; history of asthma; and alcohol abuse in remission. (*Id.*) At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 17-18) Before proceeding to step four, the ALJ found that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except simple routine tasks; only occasional exposure to changes in the work setting; able to make simple work related decisions; only frequent reaching, handling and fingering; occasional climbing ramps and stairs; no climbing ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; cannot work at unprotected heights or be exposed to dangerous moving mechanical parts; after 45 minutes of standing the claimant can stand for one to two minutes without going off-task or leaving the work station; and only occasional interaction with supervisors, co-workers, and the public.

(Tr. 18-21) Proceeding to step four, the ALJ found that because plaintiff did most of his work before turning 18, he did not have past work history or past relevant work for purposes of reviewing his claim. (Tr. 21, 54) At step five, the ALJ considered plaintiff's age, education and RFC and concluded that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, such as officer helper or

merchandise marker. (Tr. 21-22) The ALJ ultimately concluded that plaintiff has not been under a disability, as defined by the Act, since December 2, 2016, the date plaintiff's SSI application was filed. (Tr. 22)

IV.    *Plaintiff's Challenges*

Plaintiff argues that the ALJ erred by failing to properly weigh the medical opinion evidence in the record and that, as a result of this failure, the mental RFC was not based on any opinion evidence. (*See* Dkt. No. 12 (Plaintiff's Memo. of Law)) The Court rejects this argument.

While an ALJ will consider medical opinions as to a claimant's functioning, the ALJ is ultimately is tasked with reaching an RFC assessment based on the record as a whole. *See* 20 C.F.R. §416.927(d)(2). In a case involving multiple medical opinions, an ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony." *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (WDNY 2006). Further, "there is no bar to crediting only portions of medical source opinions." *Younes v. Colvin*, 1:14-CV-170, 2015 WL 1524417, at *8 (NDNY Apr. 2, 2015). When the "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Dioguardi*, 445 F. Supp. 2d at 297; *quoting* SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). Likewise, when an ALJ adopts only parts of a medical opinion, he must explain why the other parts were rejected. *Chance v. Comm'r of Soc. Sec.*, 18-CV-6043, 2019 WL 2123565, at *6 (WDNY May 15, 2019). The "explanation need not be exhaustive: it is enough if the Court can 'glean the rationale of an ALJ's decision.'" *Id.*; *quoting Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

On March 30, 2017, Janine Ippolito, Psy.D., conducted a psychiatric consultative examination of plaintiff. (Tr. 676-80) Dr. Ippolito diagnosed plaintiff with ADHD and cannabis use. (*Id.*) On examination, she found that plaintiff had normal concentration, attention and memory; average to below average cognitive functioning; and fair insight and judgment. (*Id.*) Dr. Ippolito opined that plaintiff had no difficulty: (1) completing complex tasks; (2) sustaining a routine; (3) concentrating and maintaining pace; and (4) sustaining regular attendance at work. (*Id.*) She further opined that plaintiff had mild limitations with respect to using reason and judgment to make work-related decisions as well as mild limitations with respect to adequately interacting with supervisors, co-workers, and the public. (Tr. 679). Dr. Ippolito concluded that plaintiff's mental health problems were not significant enough to interfere with his ability to function on a daily basis. (*Id.*)

While the ALJ did not assign a specific weight to Dr. Ippolito's opinion, she discussed the opinion in detail in her decision. (Tr. 20) Further, it is clear that the ALJ fully accounted for the limitations assessed by Dr. Ippolito in crafting the RFC. Consistent with Dr. Ippolito's assessment that plaintiff has some limitations with regard to behavior and being around others, the ALJ limited plaintiff to occasional interactions with supervisors, co-workers, and the public. *See Reilly v. Colvin*, 13-CV-785, 2015 U.S. Dist. LEXIS 148073 (WDNY Nov. 2, 2015) ("[A] limitation to only 'occasional' or 'limited' contact with others has been found sufficient to account for moderate limitations in social functioning."); *Ana H. v. Comm'r of Soc. Sec.*, 19-CV-432, 2020 U.S. Dist. LEXIS 219104 (WDNY Nov. 23, 2020) (RFC properly accounted for plaintiff's moderate limitation in her ability to interact with the public, supervisors, and co-workers by limiting her to occasional

interaction with those groups). Likewise, the ALJ's directive that plaintiff is limited to performing only simple and routine tasks is consistent with Dr. Ippolito's finding that plaintiff has mild limitations with respect to using reason and judgment to make work-related decisions. *See Ana H.*, 2020 U.S. Dist. LEXIS 219104 (RFC properly accounted for plaintiff's moderate limitation in responding appropriately to usual work situations and changes in routine setting by limiting her to simple, routine, and repetitive tasks).

Thus, the ALJ did not err in failing to assign a specific weight to Dr. Ippolito's opinion. For the reasons just stated, the RFC is entirely consistent with Dr. Ippolito's opinion. In fact, the ALJ assessed greater limitations than found by Dr. Ippolito. While Dr. Ippolito determined that plaintiff had the ability to perform complex tasks, the ALJ limited plaintiff to performing only simple and routine tasks to account for any limitation in plaintiff's ability to make work-related decisions. Indeed, an ALJ's failure to assign a specific weight to an opinion is considered harmless where proper considerations of the physician's opinion would not change the outcome of the claim. *Johnson v. Comm'r of Soc. Sec.*, 1:18-CV-1115, 2019 WL 7293683, at *3 (NDNY Dec. 30, 2019); *citing Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010). *See e.g., Ryan v. Astrue*, 650 F. Supp. 2d 207, 217 (NDNY 2009) (finding harmless error where the ALJ improperly discounted the treating physician's opinion, but still included the opined limitations from that opinion in the RFC, so remand would serve no purpose); *Jones v. Barnhart*, 02-CV-0791, 2003 WL 941722, at *10 (SDNY Mar. 7, 2003) (finding harmless error in the ALJ's failure to grant weight to plaintiff's treating physicians because "he engaged in a detailed discussion of

their findings, and his decision does not conflict with them."). For these reasons, the Court finds no error in the ALJ's evaluation of Dr. Ippolito's opinion.[4]

Christine Scime, a certified nurse practitioner employed by Main Pediatrics, treated plaintiff during the relevant time period. (Tr. 821-27) She diagnosed him with ADHD and treatment for cannabis abuse. (*Id.*) On November 19, 2018, NP Scime completed a mental residual functional capacity questionnaire as to plaintiff. (Tr. 821-27) NP Scime assessed greater mental functional limitations than those assessed by Dr. Ippolito. (*Id.*) For example, NP Scime opined that plaintiff had serious problems with completing simple or complex tasks; maintaining attention; sustaining a routine; completing a normal workday and maintaining regular attendance; appropriately responding to changes in the workplace and workplace stress; and engaging in personal interaction with co-workers, supervisors or the public. (Tr. 821-27) She opined that plaintiff would have difficulty maintaining appropriate behavior at work. (*Id.*) The ALJ gave "only some weight to most of [NP] Scime's opinions as they are inconsistent with the record and even her own treatment notes." (Tr. 20-21) Specifically, the ALJ agreed with the portions of NP Scime's finding that plaintiff would have difficulty with complex tasks and with social skills, and therefore limited plaintiff to simple tasks and occasional contact with others. (Tr. 21) ("I have carefully considered Ms. Scime's opinion in the context of the entire record in the formulation of the residual functional capacity by limiting the claimant to only simple tasks and limited contact with others.") The ALJ disagreed with the remainder of the opinion,

---

[4] The Court notes that the ALJ also considered the opinion of a state agency psychologist that plaintiff's mental impairments were non-severe. (Tr. 20, 67) The ALJ determined that this opinion was inconsistent with the record, which showed severe ADHD, and went on to assess greater limitations in the RFC than determined by the state agency psychologist. (Tr. 20, 67)

however, and did not include those limitations or findings in her disability determination. (*Id.*)

Consistent with the case law discussed above, the ALJ gave good reasons for assigning limited weight to NP Scime's opinion and incorporating only some of the limitations found by NP Scime in the RFC. First, the ALJ correctly noted that the more severe limitations found by NP Scime were inconsistent with her own treatment notes. (Tr. 20-21) For example, NP Scime found that plaintiff's mental condition improved over the relevant time period. (Tr. 20-21, 678-80, 887-98) (treatment notes indicating that plaintiff was doing well; had an appropriate and pleasant effect; had no depression, anxiety, suicidal thoughts or anger; and had generally normal attention and concentration). Similarly, the more severe restrictions assessed by NP Scime conflicted with her findings that plaintiff's ADHD was under control and that plaintiff had not required significant treatment for his depression for a number of years. (Tr. 20- 21, 887-98) The ALJ also correctly noted that the highly restrictive portions of NP Scime's mental functioning assessment conflicted with other evidence in the record, including plaintiff's own statements. (Tr. 20-21) NP Scime saw plaintiff for a well visit on October 23, 2017. (Tr. 20, 895-98) On examination, plaintiff was pleasant and cooperative. (Tr. 20, 895-98) He denied anxiety, depression, suicidal thoughts, or feelings of anger. (*Id.*) Plaintiff reported that he had a girlfriend and that he was getting along well with his peers. (*Id.*) During an April 2018 visit with NP Scime, plaintiff reported that he was doing well and was compliant with his ADHD medication. (*Id.* at 20, 895-98) He indicated that he was graduating from his drug rehab program in May of 2018, attending college, and working out frequently. (*Id.*) On November 7, 2018, plaintiff told NP Scime that no new problems

had occurred. (*Id.*) Plaintiff saw NP Scime for another check-up in November of 2018 and reported that he continued to do well with no problems or reports of stress. (Tr. 20, 887-88) Plaintiff indicated that he was "encouraged by the fact that he hasn't needed therapy for quite some time now." (*Id.*) He indicated that he was getting along well with his parents, not experiencing anger issues and was "overall doing better." (*Id.*)

In sum, the Court finds that the ALJ gave good, well-supported reasons for adopting the portions of NP Scime's opinion reflecting that plaintiff was limited to simple, routine tasks and occasional contact with supervisors, co-workers and the public, but declining to adopt the remaining, more restrictive portions of the opinion. *See* 20 CFR §416.927(c)(3)-(4) (the weight afforded to any medical opinion is dependent on a variety of factors, including the degree to which the opinion is supported by relevant medical evidence and consistent with the record as a whole).

Lastly, the Court notes that not only did the ALJ properly weigh and incorporate the medical opinions in the RFC, but that the RFC is further supported by other evidence in the record. The medical records reflect a history of drug and alcohol abuse, which negatively affected plaintiff's mood and abilities. (Tr. 21) However, plaintiff testified that he completed drug court in July 2018 and that, even though he still uses marijuana on occasion, he longer has a serious dependency on drugs or alcohol. (Tr. 37-39) Plaintiff further testified that he was feeling better after stopping the frequent use of drugs and alcohol. (Tr. 21, 37-39) In March of 2017, plaintiff told Dr. Ippolito that he was able to cook, clean, do laundry, and take care of his personal hygiene, and that he believed he was capable of working at that time. (Tr. 676) Plaintiff also told Dr. Ippolito that he is

prescribed medication to manage his ADHD and that he believes the medication is helping to manage his symptoms.[5] (*Id.*)

A claimant's RFC is the most a claimant can do despite his limitations. 20 C.F.R. §404.1545(a)(1). The ALJ must assess the claimant's RFC based on all the relevant medical and other evidence of record, taking into consideration the limiting effects of all the claimant's impairments. *See* SSR 96-8p, 1996 SSR LEXIS 5, at *2. "[T]he determination of the claimant's RFC is reserved to the ALJ, who is not required to accept, or follow, any one medical opinion in toto." *Cepeda v. Comm'r of Soc. Sec.*, 19-CV-4936, 2020 U.S. Dist. LEXIS 220905 (SDNY Nov. 24, 2020); *accord Camille v. Colvin*, 652 F. App'x 25, 29 n.5 (2d Cir. 2016). Contrary to plaintiff's arguments here, the ALJ did not fail to properly weigh the medical evidence in the record nor did she base her assessment of plaintiff's mental RFC on her own lay opinion. The ALJ instead considered the record as a whole, including all of the opinion evidence, the medical evidence and treatment notes, and plaintiff's own testimony and representations as to his abilities. Because the RFC is supported by substantial evidence, there is no basis to vacate the Commissioner's decision or remand for further proceedings.

---

[5] The Court rejects plaintiff's argument that the ALJ failed to explore plaintiff's "stress limitations" which were "supported by the record that plaintiff was hospitalized for a suicide attempt." The ALJ noted that on June 22, 2017, plaintiff was sent to the hospital after overdosing on pills. (Tr. 20) At that time, plaintiff admitted that he experienced suicidal ideation, took the pills, and then regretted his actions. (*Id.*) Plaintiff then called 911 and requested assistance. (*Id.*) After describing this incident, the ALJ went on to cite subsequent medical records wherein plaintiff reported that his mental condition improved and that he felt better after completing drug court. As noted above, medical treatment notes after June of 2017 reflect that plaintiff reported that he was doing much better, and denied feelings of depression, anxiety, suicidal thoughts or anger. Thus, the Court finds that the ALJ properly considered this medical evidence, in conjunction with all of the other evidence in the record, and concluded that plaintiff did not suffer significant mental health related issues after the hospitalization on June 22, 2017 and that his condition improved after that date.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is granted.

The Clerk of the Court shall take all necessary steps to close the case.


**SO ORDERED.**


Dated:      September 27, 2021
            Buffalo, New York


                              MICHAEL J. ROEMER
                              United States Magistrate Judge

14